**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2311
_____

WAYNE GRANT,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A074-990-040)
Immigration Judge:  Honorable Walter A. Durling

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 1, 2012
Before:  FUENTES, JORDAN and VAN ANTWERPEN, <u>Circuit Judges</u>

(Opinion filed: August 14, 2012 )
_____

OPINION
_____

PER CURIAM

    Wayne Grant petitions for review of a decision of the Board of Immigration

Appeals (BIA).  For the reasons below, we will deny the petition for review.

Grant entered the United States from Jamaica in 1994 and became a legal permanent resident in 1999. In December 2008, he was charged as removable for having been convicted of a controlled substance violation. He challenged his removability and applied for cancellation of removal. After a hearing, an Immigration Judge (IJ) found Grant removable but granted cancellation of removal. On the Government's appeal, the BIA vacated the grant of cancellation relief and ordered Grant removed to Jamaica. Grant filed a petition for review, and we remanded the matter on the Government's motion for the BIA to address Grant's arguments regarding his removability.

On remand, the BIA determined that Grant was removable because he had been convicted of a controlled substance offense other than a single offense involving possession for his own use of 30 grams or less of marijuana. Grant filed a petition for review. We have jurisdiction under 8 U.S.C. § 1252 and exercise de novo review over the BIA's legal conclusions. Singh v. Att'y Gen., 677 F.3d 503, 508 (3d Cir. 2012).

Removability

An alien is removable if he has been convicted of an offense relating to a controlled substance other than a single offense involving possession for one's own use of 30 grams or less of marijuana. 8 U.S.C. § 1227(a)(2)(B)(i). The Government must show by clear and convincing evidence that an alien is removable. 8 U.S.C. § 1229a(c)(3)(A).

Grant was convicted of possession of a controlled substance in violation of 35 Pa. C.S. § 780-113(a)(16). That statute does not include the amount or type of the controlled substance as an element of the crime. Because it was not clear from looking at the statute

whether Grant's conviction fell within § 1227(a)(2)(B)(i), the BIA used a modified categorical approach. It relied on an explicit factual finding Grant had assented to in state court: his stipulation to a seizure analysis of the controlled substance as involving 67.77 grams of marijuana. It also noted that Grant had asked the trial court to consider only the marijuana he actually had in his possession.

Citing Nijhawan v. Holder, 557 U.S. 29 (2009), the BIA concluded in the alternative that the language of § 1227(a)(2)(B)(i) invited inquiry into the underlying facts of the case. Relying on Grant's stipulation to the seizure analysis of the amount and type of drugs involved, the BIA used a circumstance-specific approach to determine that the Government had shown by clear and convincing evidence that Grant's conviction involved more than 30 grams of marijuana.

Grant argues that our decisions dictate that we must use only the categorical or modified categorical approach in determining whether his conviction falls within § 1227(a)(2)(B)(i). Under the categorical approach we look only to the statute of conviction to determine whether an offense falls into a category. Singh v. Ashcroft, 383 F.3d 144, 147-48 (3d Cir. 2004). As noted above, the statute of conviction does not contain the drug quantity as an element of the offense; thus, the categorical approach does not allow us to determine if Grant's conviction qualifies. Moreover, the cases Grant cites concern whether convictions for violating 35 Pa C.S. § 780-113(a)(16) qualify as aggravating felonies for involving illicit trafficking in a controlled substance. See Evanson v. Att'y Gen., 550 F.3d 284 (3d Cir. 2008); Jeune v. Att'y Gen., 476 F.3d 199

(3d Cir. 2007). Here, we must determine whether Grant's conviction was a controlled substance offense "involving thirty grams or less of marijuana" for personal use.

The BIA first used a modified categorical approach. This approach is used when the statute is phrased in the disjunctive—when there are several ways the statute could have been violated—and some conduct leading to a conviction would not meet the definition at issue. See Jean-Louis v. Att'y Gen., 582 F.3d 462, 466 (3d Cir. 2009). Here, the criminal statute is not phrased, in relevant part, in the disjunctive. Grant was charged with "knowingly and intentionally possess[ing] a controlled or counterfeit substance unlawfully." A.R. at 558. We need not determine whether the BIA erred in applying the modified categorical approach, because it alternatively, and correctly, used a circumstance-specific approach to conclude that Grant's conviction rendered him removable.

In Nijhawan, the Supreme Court used a circumstance-specific approach in determining whether the alien's conviction qualified as "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." See 8 U.S.C. § 1101(a)(43)(M)(i); 557 U.S. at 36. Here, § 1227(a)(2)(B)(i) does not describe a generic crime but rather includes similar qualifying language exempting convictions for possession of thirty grams or less of marijuana for personal use. Thus, it refers to the "particular circumstances in which an offender committed a (more broadly defined) [controlled substance] crime on a particular occasion." Nijhawan, 557 U.S. at 32. Thus, we may inquire into the specific circumstances of Grant's conviction. The question then

4

becomes what materials may be relied upon when using the circumstance-specific approach.

The Supreme Court in <u>Nijhawan</u> permitted the use of a stipulation in a sentencing document to support a finding that the loss exceeded $10,000. <u>Nijhawan</u>, 557 U.S. at 42-43. The Court rejected any artificial limit on the evidentiary sources to which the court can look in determining whether the Government has carried this burden. <u>Nijhawan</u>, 557 U.S. at 41 (rejecting suggested limitation of sources to charging documents, jury instructions, special jury findings, judge-made findings, written plea documents, and plea colloquy). In using the circumstance-specific approach, immigration courts should use fundamentally fair procedures that give an alien an opportunity to rebut the Government's claim that a prior conviction qualifies. <u>Id.</u>

The criminal information charged Grant with unlawfully possessing a controlled substance without reference to the amount. A.R. at 558. In their testimony at the bench trial, police officers described witnessing Grant possess marijuana on two occasions. One involved Grant handling a bag containing over 60 grams of marijuana, and on the other, Grant was stopped with a bag containing over 400 grams of marijuana in his car. Over 100 grams of marijuana were found in Grant's home after he was arrested. Grant's counsel stipulated to the seizure analysis for the bag of marijuana found in Grant's car. In her closing, Grant's counsel asked that the Court not hold Grant responsible for the marijuana found inside his home because there was another person in the bedroom where the marijuana was found. She also argued that the Commonwealth had not proved that the bag with 60 grams was the same bag handled by Grant. As for the bag containing

over 400 grams of marijuana, she argued that the bag was put in the car by someone else, was closed, and that Grant did not intend to exercise dominion and control over it. A.R. at 454-64.

In convicting Grant of possession of marijuana, the trial court necessarily found Grant guilty beyond a reasonable doubt based on his possession of either the bag with over 60 grams, the bag with over 400 grams, or the more than 100 grams of marijuana in his home. Grant could not have been convicted based on an amount of 30 grams or less.

Grant argues that the trial transcript does not possess the "high indicia of reliability" required. However, the testimony considered was given under oath, subject to cross-examination, and was sufficiently reliable for the trial court to find Grant guilty beyond a reasonable doubt. The BIA did not err in determining that Grant's conviction involved more than 30 grams of marijuana and that he is removable.

Cancellation of removal

Because Grant is removable under § 1227(a)(2)(B)(i), we lack jurisdiction over the BIA's discretionary determination that Grant is not entitled to cancellation of removal except to the extent that he raises constitutional issues or questions of law. 8 U.S.C. § 1252(a)(2)(C) & (D).

In its December 2009 decision, the BIA determined that Grant's convictions involved serious criminal activity. It mentioned the violent attack on his ex-wife, his conviction for theft by deception, and his admission to obtaining drugs for resale. It noted his positive equities of family support in the United States, providing financially

6

for his family, and his residence since 1994. The BIA concluded that discretion should not be exercised in favor of Grant with respect to cancellation of removal.

On remand, Grant argued that the BIA wrongly determined that his criminal convictions were serious, failed to defer to the IJ's factual findings, and failed to consider all the evidence. The BIA disagreed. It noted that the facts surrounding Grant's crimes remained the same, and it had simply exercised its discretion in weighing the positive and negative factors. It pointed out that the police reports implicated Grant in an ongoing marijuana sales operation, and that Grant did not dispute these facts before the IJ.

Before us, Grant contends that the BIA erred by engaging in de novo fact finding, applying incorrect legal standards, and failing to consider all the evidence. Grant argues that the BIA's determination that his criminal history was serious was a factual finding that the BIA was not permitted to make. However, as explained by the BIA, it simply gave more weight to Grant's criminal record in balancing his equities in its de novo review of the IJ's discretionary decision regarding cancellation of removal. 8 C.F.R. § 1003.1(d)(3)(ii) ("The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.")

Grant challenges the BIA's determination that his controlled substance offense involved 500 grams of marijuana and that he was implicated in an ongoing marijuana sales operation. While Grant contends that he never trafficked marijuana, he admits that the mother of his children asked him to purchase marijuana so that she could sell it for a profit. He then obtained marijuana from a supplier and was stopped by the police. Brief at 18; A.R. at 260-61, 298-303. The IJ noted that "[t]his conviction resulted in

7

respondent purchasing approximately $950 worth of marijuana for a female friend. He kind of acted like a conduit between the friend and individual who respondent knew was peddling marijuana in the neighborhood." A.R. at 208. The BIA did not err in its determination that Grant was involved in drug trafficking with a large amount of marijuana.

Grant asserts that the BIA overlooked his long residency in the United States, his family ties, hardship to his family on his removal, and his employment history. He also argues that the BIA ignored the IJ's findings regarding rehabilitation and recency of his criminal convictions.

We have previously explained that the BIA is not required to "write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Filja v. Gonzales, 447 F.3d 241, 256 (3d Cir. 2006) (citation omitted). After Grant argued on remand that the BIA had overlooked his long residency, his family ties, family hardship, and employment history, the BIA noted that it had considered his rehabilitation and these other factors as well as the record as a whole in its decision. A.R. at 5-6. Grant concedes that the BIA acknowledged his strong family support. The BIA mentioned Grant's long residency in the United States. A.R. at 100. The BIA did not err or deny Grant due process in not explicitly addressing every factor in its decision to deny cancellation of removal.

For the above reasons, we will deny the petition for review.